## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS
## (EASTERN DIVISION)

|  |  |
|---|---|
| In re: | Chapter 11 |
| 655 CORPORATION, | Case No. 06- 13020-JNF |
| Debtor. |  |

## STATEMENT BY DEBTOR IN RESPONSE TO
## THIS COURT'S SHOW CAUSE ORDER DATED SEPTEMBER 25, 2007

By order dated September 25, 2007 (the "Order"), this Court instructed 655 Corporation, the debtor and debtor-in-possession ("655") to "show cause, in writing . . . why its Chapter 11 case should not be converted to a case under Chapter 7 or a Chapter 11 Trustee appointed" due to the "allegations made by . . . Shamus Holding LLC ["Shamus"] (Case No. 07-14572-JNF) in a pleading captioned 'Debtor's Supplemental Opposition to Motion of LBM Financial, LLC to Dismiss Chapter 11 Proceeding' [the "Supplemental Opposition"] . . . and the absence of a disclosure statement and plan of reorganization in this one-year old case." 655 respectfully submits that cause exists to permit it to continue to operate as debtor-in-possession and that no cause exists to convert this case to one under Chapter 7 or to appoint a Chapter 11 trustee. In support hereof, 655 states as follows:

### BACKGROUND

1.      On September 1, 2006 (the "Petition Date"), 655 filed a voluntary petition for relief under Chapter 11. 655 continues to manage its business and financial affairs as debtor-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

Neither a trustee nor an official committee of unsecured creditors has been appointed in
this case.

    2.      655 owns a parcel of real estate located at 653-659 East Second Street,
South Boston, Massachusetts (the "Project" or "Real Property"). The Project consists of
eighteen (18) residential condominium units and forty-four (44) parking spaces.

    3.      On September 25, 2007, 655 received the Order, directing it to address the
Supplemental Opposition. The Supplemental Opposition presents allegations never
before presented to 655 with respect to a loan in the original principal amount of
$1,200,000 made by LBM Financial, LLC ("LBM") on May 9, 2003 to 655 and
guaranteed by Foundry Realty, LLC (the "LBM Loan") and a mortgage recorded on the
certificate of title relating to the Real Property (the "Certificate of Title") as document
number 656511 (the "LBM Loan Mortgage"). Upon receipt of the Order, 655
immediately began to inquire into the allegations presented in the Supplemental
Opposition. 655's counsel spoke with counsel to Shamus, LBM, Cathay Bank and other
third parties, and made information requests of those parties. 655 also made those third
parties aware of the urgency of its need to respond to this Court's order. In response to
its requests, 655 has received numerous documents and is awaiting additional responses.

    4.      The following report is based on the information that 655 has received to
date.

## STATEMENT OF CAUSE

    5.      655 submits that cause exists to permit it to continue to operate as debtor-
in-possession. 655 also submits that no cause exists to convert this case to one under
Chapter 7 or to appoint a Chapter 11 trustee in this case.

## *Status of the Case*

6.      Since the filing of its Chapter 11 bankruptcy case, 655's post-petition

efforts have added significant value to the estate. Prior to its bankruptcy, 655 owned a

partially constructed building that had not yet been converted to condominiums. On

November 8, 2006, this Court gave final approval to 655's request for debtor-in-

possession financing (the "DIP Financing"). 655 utilized the DIP Financing and

substantially completed construction of the Project on schedule. 655 also hired Jack

Conway and Company, Inc. to market and sell the Project. As set forth in greater detail

below, after a protracted application process before the Land Court, 655 finally obtained

Land Court approval last week for the condominiumization of the Project, a prerequisite

to closing on the sale of any of the condominium units and parking spaces at the Project.

7.      Despite a difficult economic climate, 655 has signed purchase and sale

agreements with respect to condominium units 102, 202, 203, 206 and 209 (the "Units").

The closing of Unit 203 has now occurred and other closings are scheduled to occur

within the next few weeks. 655 made extraordinary efforts to obtain Land Court

approval and to facilitate the closings of the sales of the Units. For instance, due to

unforeseen delays in obtaining the Land Court's approval, certain buyers of Units had the

ability to terminate their purchase and sale agreements because of the expiration of

closing deadlines. However, 655 was able to persuade these buyers to remain committed

to their agreements, and entered into occupancy agreements with them pending the Land

Court's review and approval of 655's condominiumization application. This exemplifies

655's post-petition management competence. It also demonstrates that 655 has a

reasonable likelihood of rehabilitation, which favors the continued operation of the estate
by 655 as a debtor-in-possession.

8.     On the other hand, should this case be converted to one under Chapter 7, it
would result in a forced liquidation of the Project. Such a liquidation would have a
serious negative impact on 655's estate and its creditors because it would result in
delayed closings, the probable loss of pending sales and a decrease in the amount realized
from the sales of the Project. In accordance with this Court's *Order Authorizing Sale of
Real Property as Transactions in the Ordinary Course of Business* entered by this Court
on July 20, 2007 (the "Sale Order"), 655 has entered into numerous purchase and sale
agreements which will generate substantial proceeds for the estate. 655 continues to
market and sell the remaining condominium units and parking spaces, which efforts have
resulted in purchase and sale agreements with sale prices at the levels contemplated by
the Sale Order. 655's continued operation as debtor-in-possession is necessary to the
estate's ability to achieve the optimal market sales prices consistent with the prices
proposed in the Sale Order.

9.     Furthermore, 655's sale of the condominium units and parking spaces will
not prejudice any creditor because, pursuant to the Sale Order, sale proceeds will remain
in escrow (with the exception only of certain enumerated customary closing costs
provided for in the Sale Order[1]) pending a confirmed plan of reorganization or further
order of the Court. Accordingly, no distribution can or will be made on account of the
LBM Note or the LBM Mortgage without further order of this Court.

_____

[1] As more particularly set forth in the Sale Order, municipal charges and assessments,
closing costs, broker commissions and 655's agent's sale compensation are paid at the
closing (the "Exceptions").

4

10.     In addition, 655's contemplated plan of reorganization will provide a

mechanism (the appointment of a creditors' representative) to resolve the claims and

disputes of creditors, including without limitation, any issues relating to the allegations

raised by Shamus in the Supplemental Opposition. Such a mechanism will serve as the

most cost-effective and expeditious means of resolving any claim disputes, including any

dispute with LBM. Converting the case to a Chapter 7 or appointing a Chapter 11 trustee

to investigate and resolve such disputes would only add an additional layer of expense,

would further delay these proceedings and would delay any distributions to creditors

holding valid claims.

11.     Based on the progress that 655 has made as a debtor-in-possession, no

cause exists to appoint a Chapter 11 trustee or to convert this case.

### Plan of Reorganization and Disclosure Statement

12.     In order to propose a feasible and confirmable plan of reorganization, 655

determined that it first had to (i) resolve the claims of New England Phoenix Co., Inc.

("NEPCO") against the estate (the "Adversary Proceeding") and (ii) obtain Land Court

approval of the condominiumization of the Project.

13.     655 brought the Adversary Proceeding against NEPCO and others on

December 14, 2006. 655 diligently prosecuted its claims against NEPCO, as evidenced

by multiple status conferences and oral arguments before the Court. During the month of

July 2007, 655 and NEPCO engaged in arms-length negotiations to resolve their disputes.

They filed a settlement with the Court on August 2, 2007, which the Court approved on

September 2, 2007 (the "Settlement"). Among other things, the Settlement gives

certainty to the amount and priority of NEPCO's claim and will result in NEPCO's claim

being satisfied in full from the initial sales of the Project. Resolving NEPCO's claim
now permits 655 to file a realistic plan of reorganization, without having to litigate over
the amount and priority of NEPCO's secured claim.

14.     655's plan of reorganization will be funded from proceeds generated by
the sales of the condominium units and parking spaces atthe Project. 655 remained
uncertain as to its ability to generate such funds until September 25, 2007, when the Land
Court finally approved the condominiumization of the Project. The approval process
took far longer than 655 expected. 655 filed its initial application on June 29, 2007,
immediately after the Project was sufficiently completed to allow the application to be
filed. Over the following three-month period, the Land Court made repeated information
requests of 655, to which 655 promptly responded. Copies of correspondence from 655
to the Land Court evidencing the requests and 655's prompt replies are attached hereto as
Exhibit A. 655 did all that it could to expedite the Land Court approval process. Not
until it received Land Court approval just one week ago could 655 sell the Project as
condominium units. Now that 655 has obtained the necessary approvals from the Land
Court, it will be able to formulate a feasible and confirmable plan of reorganization.

15.     The impediments to 655's ability to propose a feasible and confirmable
plan of reorganization were beyond its control. 655 exercised every effort to resolve its
claims against NEPCO and to obtain the required Land Court approvals. Now that
NEPCO's claim is established and 655 has the ability to generate proceeds with which to
fund a plan of reorganization, 655 is able to proceed with realistically finalizing and
filing its plan of reorganization.

6

## *The LBM Loan and the LBM Loan Mortgage*

16.     In its Supplemental Opposition, Shamus alleges that the LBM Loan was a

sham transaction intended to induce General Bank[2] into making a \$5,600,000

construction loan to 655 on May 14, 2003 (the "Construction Loan").

17.     Pursuant to the Certificate of Title, the LBM Loan is secured by the LBM

Loan Mortgage.

18.     The allegations in the Supplemental Opposition, if proven, would create

an issue regarding the validity of the LBM Loan and the LBM Loan Mortgage.

19.     In accordance with the Certificate of Title and pursuant to the settlement

between 655 and NEPCO approved by this Court at a minimum, at least \$8,420,408 will

have to be derived from sales of condominiums before any amount could possibly be

payable on account of the LBM Loan, consisting of at least \$428,143 owed to NEPCO

(first mortgage pursuant to Settlement); at least \$6,048,000 owed to Cathay Bank (second

mortgage)[3]; at least \$161,000 owed to counsel to 655 (carve-out from DIP Financing)[4];

and at least \$1,783,265 owed to LBM under its DIP Financing.[5]

20.     Based on current real estate market conditions and the prices at which

condominium units of the Project are under agreement, 655 presently anticipates

generating proceeds of approximately \$9,850,000 from the sale of the Project. As set

forth above, the alleged claims senior in priority to the alleged claim on account of the

LBM Loan total at least \$8,420,408. If the LBM Loan is unenforceable and the LBM

---

[2] Cathay Bank is the successor by merger to General Bank.

[3] Through the Petition Date, pursuant to proof of claim.

[4] Through September 28, 2007.

[5] 655 reserves the right to contest the amount, priority and validity of any claims and
liens asserted by any party.

Loan Mortgage invalid, there will be no more than approximately $1,400,000 left that

may be applied to the next highest priority claim. Allegedly, LBM holds the next priority

claims, which aggregate more than the remainder of the projected gross sale proceeds,

leaving LBM with a deficiency on its other claims. Therefore, at least initially, it appears

that the validity of the LBM Loan may be inconsequential in terms of distributions to

which creditors junior to LBM may be entitled.

21.     Furthermore, based on the information received by 655 to date on account

of its inquiry, it preliminarily appears that:

A.     General Bank was fully aware that LBM was making a $1.2 million loan
to 655 to partially satisfy the approximately $2.8 million senior mortgage
obligation owed to Wolfpen Financial.

B.     The LBM Loan transaction actually occurred, and the LBM Loan
proceeds were used to partially satisfy the Wolfpen mortgage loan.

C.     General Bank's $5.6 million loan was utilized to satisfy the remaining
balance of the Wolfpen mortgage loan.

D.     The allegation by Shamus that the Wolfpen mortgage was assigned to On
Broadway Corporations is not true.

655 is continuing to review supporting documentation and will review any further

information that may be provided to it by Shamus or any other party.

It is presently unclear whether 655 has any cause of action with respect to the

LBM Loan and, even if it does, whether pursuing that cause of action would benefit the

estate.[6] Furthermore, 655 is well within any applicable statute of limitations for

---

[6] Section 551 of the Bankruptcy Code provides that avoidance actions are "preserved for
the benefit of the estate." In the event that the LBM Loan Mortgage is avoided, that lien
would be preserved for the benefit of 655's estate, meaning that the estate (i.e., typically,
the general unsecured creditors) may step into the shoes of the former lienholder. *See* 5
*Collier on Bankruptcy*, ¶ 551.02 (15th ed. rev.) ("the estate succeeds . . . to the priority
that the avoided and preserved lien had with respect to competing interests"). However,

8

commencing a fraudulent conveyance or other action with respect to the LBM Loan and

LBM Loan Mortgage. *See* 11 U.S.C. § 108(a). 655 has made no distribution of Project

proceeds to creditors and, in fact, must not do so (other than with respect to NEPCO and

customary closing costs) without authorization from the Court in accordance with the

Sale Order. There will accordingly be no distribution to LBM on account of the LBM

Loan absent further Court order. Because there are significant prior claims that must be

paid before any such distribution becomes an issue, 655 has an opportunity to carefully

review the assertions of Shamus and to avoid rash actions that may serve only to reduce

the ultimate dividend to creditors. Lastly, as set forth above, 655 anticipates proposing a

plan of reorganization whereby any causes of action will be assigned to a creditors'

trustee who will have authority to pursue such causes of action as it deems appropriate.

This mechanism is economical and efficient and in the best interest of creditors. On the

other hand, the appointment of a Chapter 11 trustee or conversion of the case to Chapter

7 would have the deleterious effect of, among other things, adding an extra layer of

expense and a further period of delay.

### *No Cause Exists to Appoint a Trustee or to Convert this Case*

22.     The appointment of a Chapter 11 trustee is an extraordinary remedy and

there is a strong presumption against invoking that remedy. *See, e.g., In re Garland*

*Corp.*, 6 B.R. 456, 460 (1st Cir. B.A.P. 1980) ("There is a presumption in a chapter 11

case that the debtor is to continue in control and possession of its business." (citation

---

it is unclear how that wouldl affect junior lienholders if it was also determined that the
LBM Loan is invalid because the estate only inherits the rights which the trustee
acquires, which rights are determined by state law. *See id.* For example, if the LBM
Loan is invalid, the LBM Loan Mortgage may be also be unenforceable such that there is
effectively no "lien" to preserve for the benefit of the estate.

omitted)); *In re The Bible Speaks*, 74 B.R. 511, 512 (Bankr. D. Mass. 1987) ("The

appointment of a trustee in a Chapter 11 case is the exception rather than the rule."

(citations omitted)); *Official Committee of Asbestos Claimants v. G-I Holdings Inc. (In re

G-I Holdings Inc.)*, 295 B.R. 502, 511 (D. N.J. 2003), aff'd 385 F.3d 313 ("'Appointing a

trustee must be considered a last resort.'" (citation omitted)). *See also* 7 Collier on

Bankruptcy, ¶ 1107.01 (15th ed. rev. 2006). "The presumption in chapter 11 cases is that

'current management is generally best suited to orchestrate the process of rehabilitation

for the benefit of creditors and other interests of the estate.'" *Petit v. New England

Mortgage Services, Inc. (In re Petit)*, 182 B.R. 64, 68 (Bankr. D. Me. 1995) (citation

omitted). A corollary to the presumption is that the appointment of a Chapter 11 trustee

causes delay and additional expense to the estate. *In re North Star Contracting Corp.*,

128 B.R. 66, 70 (Bankr. S.D.N.Y. 1991); *In re Crescent Beach Inn, Inc.*, 22 B.R. 155,

160 (Bankr. D. Me. 1982) ("Appointment of a trustee would impose a substantial

financial burden on an already hard pressed debtor, and could preclude an effective

reorganization due to resulting administrative expenses." (citation omitted)). Before a

court burdens the estate with such delay and expense, it must determine whether those

costs will result in an ultimate benefit by evaluating the totality of the circumstances. *In

re North Star Contracting Corp.*, 128 B.R. at 70.

23.     Likewise, the involuntary conversion of a case from one under Chapter 11

to one under Chapter 7 requires a showing of sufficient cause. "[A]bsent unusual

circumstances, the court must not convert or dismiss the case if (1) there is a reasonable

likelihood that a plan will be confirmed...(2) the grounds for converting or dismissing the

case include an act or omission by the debtor other than substantial or continuing loss to

or diminution of the estate and the absence of a reasonable likelihood of rehabilitation
and (3) there exists a reasonable justification for the act or omission and the act or
omission will be cured within a reasonable time fixed by the court." 7 *Collier on
Bankruptcy*, ¶ 1112.04[2] (15th ed. rev.).

24.     As set forth in detail above, 655's progress as a debtor-in-possession has
added significant value to the estate for the benefit of creditors, exemplifies 655's ability
to competently manage the estate and demonstrates the likelihood of 655's successful
reorganization. All of these facts weigh in favor of 655's continued operation as a
debtor-in-possession.

### CONCLUSION

25.     Substantial cause exists to permit the Debtor to continue to function as a
debtor-in-possession.

26.     No cause exists to convert this case to one under Chapter 7 or to appoint a
Chapter 11 trustee in this case.


                              Respectfully submitted,

October 2, 2007               655 CORPORATION,

                              By its Attorneys,

                              /s/ Kathleen A. Rahbany
                              William R. Moorman, Jr. (BBO# 548593)
                              Kathleen A. Rahbany (BBO# 654322)
                              Craig and Macauley Professional Corporation
                              Federal Reserve Plaza
                              600 Atlantic Avenue
                              Boston, Massachusetts 02210
                              (617) 367-9500
                              fax (617) 742-1788

# EXHIBIT A

CRAIG AND MACAULEY

COUNSELLORS AT LAW

www.craigmacauley.com

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

June 29, 2007

***Via Hand Delivery***

Land Court Department
226 Causeway Street
Boston, MA 02114
Attention: George Axiotis

      Re:    <u>SIX55 Condominium – 653-659 East Second Street, Boston, MA</u>

Dear Mr. Axiotis:

Enclosed please find the following documents submitted herewith for approval by the Land Court:

1. Master Deed of SIX55 Condominium.
2. Declaration of Trust of SIX55 Condominium.
3. Attested copy of the declarant's certificate of title (Cert. No. 114024).
4. Site Plan (paper copy).
5. Floor Plans (Floors 1-3) (paper copies).

Please call me with any questions or comments you may have.

I have also enclosed three self addressed envelopes for your convenience if you should desire to send any notes or comments by mail.

                        Sincerely,

                        Christopher Currier

Enclosures

CRAIG AND MACAULEY PROF

COUNSELLORS AT LAW

*www.craigmacauley.com*

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

July 23, 2007

07 JUL 23 PM 12: 00    LAND COURT FILED

## VIA HAND DELIVERY

Land Court Department
226 Causeway Street
Boston, MA 02114
Attention: George Axiotis

Re:    SIX55 Condominium – 653-659 East Second Street, Boston, MA

Dear Mr. Axiotis:

In connection with your review of the SIX55 Condominium Master Deed and related instruments, enclosed please find a certified copy of an Order of the United States Bankruptcy Court for the District of Massachusetts (the "Order") authorizing the sale of real property as transactions in the ordinary course of business. This Order supplements our previous submission received by your office on June 29, 2007.

If there are any questions regarding the enclosed, please contact Christopher J. Currier, Esq. at (617) 367-9500.

Sincerely,

David M. Bearman
Paralegal

Enclosure

cc:    Christopher J. Currier, Esq. (w/o enclosure)

CRAIG AND MACAULEY | PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

*www.craigmacauley.com*

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

August 3, 2007

*Via Hand Delivery*

John R. McCoy
Attorney/Title Examiner
Land Court
226 Causeway Street
Boston, Massachusetts 02114

        Re:    655 Condominium

Dear Mr. McCoy:

        This letter is in response to your letter to me dated July 20, 2007 concerning the above-referenced condominium. I have attached per your request the following items:

1. Copies of all of the documents referenced in you July 20, 2007 letter;
2. Revised site plan with the grammatical correction and now titled Site Plan;
3. Revised set of floor plans with the rooms more fully dimensioned;
4. Revised Master Deed reflecting that the residential units are located on the second and third floors, and with language added to Section (f) on page 8 referencing the site plan.

        You will note on the revised floor plans that Unit Nos. 107 and 207 now show the rooms formally labeled studies as office/dens.

        With respect to your question concerning the inclusion in the Master Deed and on the floor plans of Storage Unit Nos. 110 and 111, I would direct your attention to Section IV on page 3 of the Master Deed which describes how the storage easements are to be conveyed by the declarant. The storage easements are to be conveyed by the declarant to residential unit owners or retained by the declarant for its exclusive use. It

CRAIG AND MACAULEY | PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

John McCoy, Esquire
August 3, 2007

is anticipated that each of the residential units will receive a storage easement which will correspond to their respective unit numbers and that Storage Unit Nos. 110 and 111 may be conveyed to one or two of the residential unit owners upon the payment of an appropriate price.

I hope this satisfies your requirements. If you have any questions or concerns, please give me a call at the above-referenced number. We appreciate your time and effort on this matter and look forward to receiving Land Court approval at your earliest opportunity.

With kindest regards.

Sincerely,

Christopher J. Currier

CJC/red
enclosures

CRAIG AND MACAULEY | PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

*www.craigmacauley.com*

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

August 15, 2007

*Via Hand Delivery*

John R. McCoy
Attorney/Title Examiner
Land Court
226 Causeway Street
Boston, Massachusetts 02114

        Re:     655 Condominium

Dear John:

        Enclosed please find a specimen Unit Deed. I thought that you may want to approve this form as part of your review of the condominium documents.

        Thank you for your attention to this matter.

        With kindest regards.

                                        Sincerely,

                                        Christopher J. Currier

CJC/red
enclosure

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

August 27, 2007

*Via Hand Delivery*

John R. McCoy
Attorney/Title Examiner
Land Court
226 Causeway Street
Boston, Massachusetts 02114

      Re:    655 Condominium

Dear John:

      Enclosed is a revised clean and redlined version of the Master Deed. The redlined draft shows changes made to the last draft.

      I have tabbed the sections dealing with the transfer of the Residential Units and Garage Parking Units.

      Thank you for all of your help.

Sincerely,

Christopher J. Currier

CJC/red
enclosures

CRAIG AND MACAULEY | PRC   SIO NAL CORPORATION   *www.craigmacauley.com*

COUNSELLORS AT LAW

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

September 5, 2007

***Via Hand Delivery***

John R. McCoy
Attorney/Title Examiner
Land Court Department
226 Causeway Street
Boston, Massachusetts 02114

> Re:   SIX55 Condominium (the "Project") located at
> 653-659 East Second Street, Boston, MA (the "Property")

Dear Mr. McCoy:

I am providing you with this letter pursuant to your request for additional information regarding the Project. You asked me to let you know the status of the various encumbrances on the Property. You also asked me to provide you with an update on the bankruptcy case of 655 Corporation (the "Debtor"). In addition, you requested and I have attached copies of the tax takings recorded against the Property as well as the related releases. I have also enclosed the original executed Master Deed, Declaration of Trust and Plans.

A review of record title reveals the following outstanding liens or potential liens against the Property:

> a.   Mortgage and Security Agreement from 655 Corporation to Barbara Buckley, in the original principal amount of $100,000.00, dated September 6, 2000, filed as Document No. 603946; as affected by Preliminary Injunction Order, CA No. 00-4021C, New England Phoenix Co., Inc. v. Barbara Buckley, dated September 14, 2000, filed as Document No. 609131; as further affected by Assignment of Mortgages to New England Phoenix Co., Inc., dated June 8, 2001, filed as Document No. 629141; as further affected by Discharge of Mortgage and Security Agreement by New England Phoenix Co., Inc., dated February 11, 2002, filed as Document No. 714998; as further affected by Statement of Adverse Claim by New England Phoenix Co., Inc. (denying issuance of said Discharge), dated February 14, 2006, filed as Document No. 715926.
>
> b.   Mortgage and Security Agreement from 655 Corporation, et als, to Barbara Buckley, in the original principal amount of $600,000.00, dated September 6,

2000, filed as Document No. 603947; as affected by Preliminary Injunction Order, CA No. 00-4021C, New England Phoenix Co., Inc. v. Barbara Buckley, dated September 14, 2000, filed as Document No. 609131; as further affected by Assignment of Mortgages to New England Phoenix Co., Inc., dated June 8, 2001, filed as Document No. 629141; as further affected by Partial Release of Mortgage and Security Agreement by New England Phoenix Co., Inc., dated February 11, 2002, filed as Document No. 714999; as further affected by Statement of Adverse Claim by New England Phoenix Co., Inc. (denying issuance of said Partial Release), dated February 14, 2006, filed as Document No. 715926.

c. Memorandum of Lis Pendens by New England Phoenix Co., Inc., v. 655 Corporation, CA No. 318987, dated February 14, 2006, filed as Document No. 715939.

d. Mortgage and Security Agreement from 655 Corporation to Wolfpen Financial, LLC, in the original principal amount of $2,275,000.00, dated March 23, 2002, filed as Document No. 630778; as affected by Assignment of Real Estate Mortgage and Security Agreement to On Broadway Corporation, dated May 9, 2003, filed as Document No. 656514.

e. Mortgage and Security Agreement from 655 Corporation to General Bank[1], in the original principal amount of $5,600,000.00, dated April 16, 2003, filed as Document No. 656505.

f. Collateral Assignment of Leases and Rents from 655 Corporation to General Bank, dated April 16, 2003, filed as Document No. 656506.

g. UCC-1 Financing Statement naming 655 Corporation, as Debtor, and General Bank, as Secured Party, filed May 14, 2003, as Document No. 656507.

h. Mortgage and Security Agreement from 655 Corporation to LBM Financial, LLC, in the original principal amount of $1,200,000.00, dated May 9, 2003, filed as Document No. 656511; as affected by Subordination Agreement by LMB Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

i. Assignment of Leases and Rents from 655 Corporation to LBM Financial, LLC, dated May 9, 2003, filed as Document No. 656512; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

j. UCC-1 Financing Statement naming 655 Corporation, as Debtor, and LBM Financial, LLC, as Secured Party, filed May 14, 2003, filed as Document No. 656513; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

---

[1] Cathay Bank is the successor-in-interest to General Bank.

k.  Mortgage and Security Agreement from 655 Corporation, et al., to LBM Financial, LLC, in the original principal amount of $3,250,000.00, dated December 22, 2003, filed as Document No. 672787; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466. NOTE: Not on current Certificate of Title.

l.  Mortgage and Security Agreement from 655 Corporation, et al., to LBM Financial, LLC, in the original principal amount of $675,000.00, dated December 22, 2003, filed as Document No. 672788; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466. NOTE: Not on current Certificate of Title.

m.  Mortgage and Security Agreement from 655 Corporation, et al., to LBM Financial, LLC, in the original principal amount of $2,000,000.00, dated March 12, 2004, filed as Document No. 677624; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

n.  Mortgage and Security Agreement from 655 Corporation, et al., to LBM Financial, LLC, in the original principal amount of $418,500.00, dated April 7, 2004, filed as Document No. 679471; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

o.  Notice of Contract by National Lumber Company, dated August 23, 2004, filed as Document No. 686865; as affected by Sworn Statement of Claim in the amount of $59,762.41, filed as Document No. 691905; as further affected by Complaint, Suffolk Superior Court CA No. 05-0378-E, in the amount of $61,568.73, dated January 26, 2005, filed as Document No. 695432; as further affected by Judgment and Order dated May 24, 2006, in the amount of $76,962.67, filed as Document No. 720491.

p.  Mortgage and Security Agreement from 655 Corporation to LBM Financial, LLC, in the original principal amount of $850,000.00, dated April 7, 2005, filed as Document No. 699125; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

q.  Assignment of Leases and Rents from 655 Corporation to LBM Financial, LLC, dated April 7, 2005, filed as Document No. 699126; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

r.  UCC-1 Financing Statement naming 655 Corporation, as Debtor, and LBM Financial, LLC, as Secured Party, filed April 7, 2005, as Document No. 699127; as affected by Subordination Agreement by LBM Financial, LLC, dated October 18, 2005, filed as Document No. 711466.

s. Mortgage and Security Agreement from 655 Corporation to LBM Financial, LLC, in the original principal amount of $2,432,000.00, dated January 27, 2006, filed as Document No. 715322.

t. Assignment of Leases and Rents from 655 Corporation to LBM Financial, LLC, dated January 27, 2006, filed as Document No. 715323.

u. UCC-1 Financing Statement naming 655 Corporation, as Debtor, and LBM Financial, LLC, as Secured Party, filed February 2, 2006, as Document No. 715324.

v. Notice of Contract by Tudor Plastering, Inc., dated August 30, 2006, filed as Document No. 725519; as affected by Statement of Account in the amount of $130,000.00, dated August 31, 2006, filed as Document No. 725520; as further affected by Complaint, Suffolk Superior Court CA No. 06-5063, in the amount of $130,000.00, dated December 5, 2006, filed as Document No. 730586.

w. Mortgage and Security Agreement from 655 Corporation to LBM Financial, LLC, in the original principal amount of $43,735.00, dated September 20, 2006, filed as Document No. 726399; see Order Authorizing Postpetition Financing on a Priority Secured Basis and Granting Related Relief (for purposes of paying insurance premiums) by the US Bankruptcy Court, Case No. 06-13020-JNF, dated September 18, 2006, filed as Document No. 726398.

x. Mortgage and Security Agreement from 655 Corporation to LBM Financial, LLC, in the original principal amount of $2,000,000.00, dated November 10, 2006, filed as Document No. 729363; see Final Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 363 and 364 and (II) Granting Liens to Secure Such Post-Petition Financing, dated November 8, 2006, filed as Document No. 729362.

In addition, a judgment was recorded against the Property by National Lumber Company. When the Debtor filed its bankruptcy petition on September 1, 2006, an automatic stay came into effect pursuant to 11 U.S.C. § 362. This stayed the judgment entered in favor of National Lumber Company, which judgment had not been satisfied at the time that the Debtor filed its bankruptcy petition. National Lumber Company's judgment and all of the liens recorded against the Property will be treated in accordance with the bankruptcy laws under the supervision of the bankruptcy court.

At multiple hearings over the past several months, the Debtor has informed the bankruptcy court that it is in the process of obtaining the Land Court's approval of condominiumization of the Project. In anticipation of that approval, the Debtor filed a motion with the bankruptcy court seeking authority to sell condominium units at the Project once Land Court approval was obtained. On July 20, 2007, the bankruptcy court granted the Debtor's motion and authorized the Debtor to sell units at the Project (the "Sale Order") (a certified copy of the Sale Order was submitted to the Land Court on July 23, 2007). The bankruptcy court entered the Sale Order with the full knowledge that such sales cannot be consummated until the Project is approved and condominiumized by the Land Court. It is therefore implicit in the Sale

4

CRAIG AND MACAULEY | PROFESSIONAL CORPORATION
COUNSELLORS AT LAW

Order that the bankruptcy court deemed it appropriate for the Project to be condominiumized. In fact, the bankruptcy court has continuously inquired as to the status of the Land Court's progress because it understands that condominiumization of the Project is a prerequisite to the Debtor's ability to file a plan of reorganization, satisfy the claims of its creditors and exit bankruptcy.

I hope that this addresses all of your concerns. Please let me know if you have additional questions. Thank you.

Sincerely,

Christopher J. Currier

enclosures

5

**CRAIG AND MACAULEY** | PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

*www.craigmacauley.com*

FEDERAL RESERVE PLAZA
600 ATLANTIC AVENUE
BOSTON, MASSACHUSETTS 02210

TEL (617) 367-9500
FAX (617) 742-1788

September 14, 2007

***Via Hand Delivery***

John R. McCoy
Attorney/Title Examiner
Land Court Department
226 Causeway Street
Boston, Massachusetts 02114

> Re:   SIX55 Condominium (the "Project") located at
> 653-659 East Second Street, Boston, MA _____

Dear Mr. McCoy:

You asked me to confirm that the Bankruptcy Court has been advised of the Land Court actions brought by New England Phoenix Company, Inc. ("NEPCO") against 655 Corporation (the "Debtor"). The Bankruptcy Court was informed of the Land Court proceedings on numerous occasions. Most recently, the Bankruptcy Court approved a settlement agreement between NEPCO and the Debtor whereby, among other things, the Debtor agreed to pay NEPCO $425,000 from sale proceeds from the Project and NEPCO agreed to dismiss its Land Court actions. It is anticipated that upon consummation of the first two closings of Project condominium sales, NEPCO's claim will be paid in full. For your convenience, I have attached copies of the *Joint Motion for an Order Pursuant to Bankruptcy Rule 9019 Approving Settlement between Debtor and New England Phoenix Company, Inc.* (with the settlement agreement attached as Exhibit A) and the Bankruptcy Court's order of September 2, 2007 approving the settlement.

You also wanted to know whether the appeal period with respect to the Bankruptcy Court's July 20, 2007 *Order Authorizing Sale of Real Property as Transactions in the Ordinary Course of Business* (the "Order") has run. Pursuant to both the terms of the Order and the Federal Rules of Bankruptcy Procedure, the appeal period for the Order terminated on July 30, 2007 and no appeal was filed. *See* Fed. R. Bankr. P. 8001 (a) ("An appeal from a judgment, order, or decree of a bankruptcy judge...shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002.") and 8002 (a) ("The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from.").

You also requested that the Debtor record a certificate of compliance with respect to the Order with each first unit deed out. Accordingly, I have enclosed a draft of the form of certificate of compliance.

CRAIG AND MACAULEY | PROFESSIONAL CORPORATION

COUNSELLORS AT LAW

John R. McCoy
September 14, 2007

I hope that this addresses all of your concerns.  Please let me know if you have additional questions.  Thank you.

Sincerely,

Christopher J. Currier

enclosures

2